# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

**UNITED STATES OF AMERICA,**

v.

**MIGUEL ANGEL ROJAS,**
   Defendant.

Case No.: 4:23-cr-222-CLM-JHE

## ORDER

     Defendant Miguel Angel Rojas moves to suppress physical evidence and statements made during a traffic stop, contending that the stop was unconstitutionally prolonged. (Doc. 27, pp. 4–7; doc. 90, pp. 4–11). Rojas also moves to suppress statements he made to an investigator the next day, asserting that his *Miranda* waiver was not knowing and voluntary. (Doc. 89, pp. 164–72; doc. 90, pp. 11–19). After holding a suppression hearing, the magistrate judge entered a report, recommending that the court deny Rojas' motion to suppress. (Doc. 95). Rojas timely objects to the report and recommendation. (Doc. 96). For the reasons stated within, the court **WILL OVERRULE** Rojas' objections and **DENY** the motion to suppress (doc. 27).

—

     Rojas is charged with one count of possession of an unregistered short-barreled shotgun in violation of 26 U.S.C. § 5861(d). (Doc. 1). In his motion to suppress, Rojas says that officers unlawfully discovered the short-barreled shotgun because they unconstitutionally prolonged his March 28, 2022, traffic stop. Rojas also says that the Government has failed to meet its burden to show that Rojas knowingly and intelligently waived his *Miranda* rights during two interviews with an investigator the day after his arrest.

     The magistrate judge recommends that the court deny Rojas' motion to suppress for three reasons. First, law enforcement's pat-down of Rojas did not add time to the traffic stop, and once the pat-down was complete, Rojas ceased to be detained and his encounter with law enforcement became consensual. Second, even if the traffic stop was unlawfully prolonged, the short-barreled

shotgun would have inevitably been discovered during an inventory search of Rojas' vehicle. Finally, Rojas does not lack the capacity to knowingly and intelligently provide a *Miranda* waiver. Rojas raises four objections to the magistrate judge's report and recommendation.

    1. *Reasonable suspicion*: Rojas first objects to the magistrate judge's finding that Officer Majano possessed reasonable suspicion to justify a pat-down of Rojas. The court **OVERRULES** this objection. "[A] driver, once outside [a] stopped vehicle, may be patted down for weapons if the officer reasonably concludes that the driver might be armed and presently dangerous." *Arizona v. Johnson*, 555 U.S. 323, 331 (2009) (quotations omitted). And at the time of the pat-down, Officer Majano knew that Rojas (1) had seven previous criminal charges, including two felonies; (2) had been assigned a low warning level by LETS; and (3) kept reaching and moving for things in his vehicle. Thus, Officer Majano had reasonable suspicion to justify the pat-down search. *See United States v. Bishop*, 940 F.3d 1242, 1249 (11th Cir. 2019) (affirming denial of motion to suppress when defendant's known criminal history combined with "refusals to comply with . . . lawful orders" and "peculiar movements and tense behavior while seated in [his] truck" supported a finding of reasonable suspicion). And because the pat-down was justified, it did not impermissibly prolong the traffic stop. *See Rodriguez v. United States*, 575 U.S. 348, 354 (2015) ("[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, and attend to related safety concerns." (citations omitted)).

    2. *Consensual encounter*: Rojas next objects to the magistrate judge's finding that after the pat-down, Rojas ceased to be detained. An initial detention becomes a consensual encounter if "a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *United States v. Ramirez*, 476 F.3d 1231, 1238 (11th Cir. 2007) (quotations omitted). Having reviewed Officer Majano's body camera footage, the suppression hearing transcript, and the magistrate judge's report and recommendation, the court agrees with the magistrate judge that a reasonable person in Rojas' position would have felt free to terminate his encounter with Majano after the pat-down. *See United States v. Burwell*, 763 F. App'x 840, 845–46 (11th Cir. 2019). So the court **OVERRULES** this objection.

3. *Inevitable discovery doctrine*: Rojas also objects to the magistrate judge's alternative finding that even if Rojas' traffic stop was unlawfully prolonged, the short-barreled shotgun would have inevitably been discovered during an inventory search of Rojas' Camaro. "Under the inevitable discovery exception, if the prosecution can establish by a preponderance of the evidence that . . . information would have ultimately been recovered by lawful means, the evidence will be admissible." *United States v. Virden*, 488 F.3d 1317, 1322 (11th Cir. 2007). And an inventory search of a vehicle is lawful when officers have the authority to impound a vehicle and follow the procedures outlined in departmental policy. *See United States v. Williams*, 936 F.2d 1243, 1248 (11th Cir. 1991).

As explained by the magistrate judge, Officer Majano was required to impound Rojas' Camaro because Rojas' driver's license was revoked. *See* Ala. Code § 32-6-19(b). And it is Fort Payne Police Department policy that "[a]n inventory is to be conducted of all vehicles which are impounded." (Doc. 87-5, p. 1). So Officer Majano had the authority to impound Rojas' Camaro and conducting an inventory search, which would have revealed the short-barreled shotgun, would have adhered to the police department's policies. But Rojas says that the inevitable discovery doctrine shouldn't apply for two reasons. First, Officer Majano incorrectly thought that city policy gave him the authority to tow Rojas' vehicle when it was Alabama state law that gave him the authority to do so. Second, Officer Majano's statements to Officer Pope suggest that the decision to impound the Camaro and conduct an inventory search was pretextual.

The court disagrees. It is undisputed that Officer Majano had the authority to impound Rojas' Camaro, and Officer Majano testified that he knew from his training that he was required to impound a vehicle whenever a driver had a revoked license. Officer Majano was just confused about the source of this authority. Thus, the court agrees with the magistrate judge that Officer Majano's mistaken impression is irrelevant. And because Officer Majano was required to both impound the Camaro and conduct an inventory search his "expectation that evidence [would] turn up [would] not invalidate an otherwise lawful inventory search." *See United States v. Isaac*, 987 F.3d 980, 989 (11th Cir. 2021). So the court **OVERRULES** this objection.

4. *Intelligent and knowing waiver*: Finally, Rojas objects to the magistrate judge's rejection of his argument that he lacked the capacity to knowingly and intelligently waive his *Miranda* rights. Rojas says that the magistrate judge erred in finding that the opinion of Rojas' expert, Dr. Francisco Lopez, was unreliable and that the videos of Rojas' arrest and interviews suggest that Rojas knowingly waived his *Miranda* rights.

Because the magistrate judge presided over the suppression hearing, the court defers to his credibility determination about the reliability of Dr. Lopez's testimony. *See United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). And the court agrees with the magistrate judge that much of Dr. Lopez's testimony undermined the reliability of his report. For example, Dr. Lopez could not remember or was unaware of many key facts relevant to his analysis, such as Rojas' previous arrests for gun-related charges and Rojas' familiarity with legal terms and concepts. (*See* Doc. 89, pp. 100–01, 132–34). Nor did Dr. Lopez adequately explain why Rojas answering 'no' to some of Detective Dorsett's questions and minimizing his recent drug use failed to contradict Dr. Lopez's finding that Rojas was extremely suggestible. (*See id.*, pp. 120–21, 127–28). Plus, as the magistrate judge noted, while Rojas scored poorly on the vocabulary portion of the MRCI, Rojas had good-to-average scores on the other three portions of the MCRI. (*See* Doc. 87-6, pp. 9–10). The court agrees with the magistrate judge that Rojas' arrest videos, which show that he understood legal terms such as a "revoked license," "warrants," and "bonding out," undermines Dr. Lopez's finding that Rojas' vocabulary score established that he could not understand simpler terms such as "right" or "afford." Finally, having reviewed Dr. Lopez's report, the suppression hearing transcript, and the videos of Rojas' arrest and interviews, the court agrees with the magistrate judge that the record supports a finding that Rojas understood his rights and the consequences of abandoning them. So the court **OVERRULES** Rojas' objection to the magistrate judge's recommendation that the court not suppress the statements Rojas made during his interviews with Detective Dorsett.

—

In sum, having reviewed de novo the entire record, including the magistrate judge's report and Rojas' objections, the court **OVERRULES** Rojas' objections, **ADOPTS** the magistrate judge's report, and **ACCEPTS** the recommendation. The court **DENIES** Rojas' motion to suppress (doc. 27).

**DONE** and **ORDERED** on January 8, 2026.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE